Jonas Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Tyler Ohler, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff,*<br><br>v.<br><br>Baron App, Inc. (DBA Cameo),<br><br>    *Defendant.* | Case No. 5:26-cv-1216<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# Table of Contents

I.    Case summary...................................................................................................1

II.   Parties. .............................................................................................................1

III.  Jurisdiction and venue. ....................................................................................2

IV.   Facts.................................................................................................................2

     A.    Drip pricing is illegal in California......................................................2

     B.    Cameo's drip pricing. ..........................................................................4

     C.    Cameo charged Plaintiff a drip-priced service fee.............................13

     D.    No adequate remedy at law. ...............................................................14

     E.    Class action allegations. ....................................................................14

V.    Claims. ...........................................................................................................15

     Count 1: Consumers Legal Remedies Act (CLRA) ..................................15

     Count 2: Unfair Competition Law (UCL) .................................................17

     Count 3: False Advertising Law (FAL) .....................................................18

     Count 4: Quasi-Contract  (Unjust Enrichment) ........................................19

VI.   Relief..............................................................................................................20

## I.    Case summary.

1.    Drip pricing—displaying a lower price up front and then tacking on junk fees at the end of the purchase—is illegal in California. In 2023, California passed SB 478 (the Honest Pricing Law), which specifically prohibits drip pricing.  It states: "This act is intended to specifically prohibit drip pricing, which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service."[1]

2.    SB 478 amended the Consumers Legal Remedies Act (CLRA) to make drip pricing illegal under the CLRA, beginning on July 1, 2024.  But the legislature acknowledged that drip pricing was already illegal under California's other consumer protection statutes: "This practice…is prohibited by existing statutes, including the Unfair Competition Law (Chapter 5 (commencing with Section 17200) of Part 2 of Division 7 of the Business and Professions Code) and the False Advertising Law (Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code)."  SB 478(b).

3.    Thus, California's statutory scheme is as follows: drip pricing is, and always has been, illegal under California's Unfair Competition Law and False Advertising Law. Starting July 1, 2024, drip pricing is additionally illegal under California's Consumers Legal Remedies Act.

4.    Cameo is an online platform that sells personalized video messages from celebrities. Cameo uses drip pricing: advertising a lower price for videos up front, only to tack on junk "service" fees at the end.  This is what happened to Plaintiff Mr. Ohler.

5.    Plaintiff brings this putative class action for California consumers that were similarly charged illegal service fees.

## II.    Parties.

6.    Plaintiff Tyler Ohler is domiciled in Oro Grande, California (San Bernadino County).

---

[1] SB 478, available at
https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=202320240SB478

7.      The proposed class includes citizens of California.

8.      Defendant Baron App, Inc. (dba Cameo) is a Delaware corporation with its principal place of business in Chicago, Illinois.

## III.    Jurisdiction and venue.

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

10.     The Court has personal jurisdiction over Defendant because Defendant sold Cameo videos to consumers in California, including to Plaintiff.

11.     Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold Cameo videos to consumers in this District, including Plaintiff.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

## IV.    Facts.

### A.    Drip pricing is illegal in California.

12.     "As more and more commerce has moved online, so too have manipulative design practices—termed 'dark patterns" that "trick or manipulate users into making choices they would not otherwise have made and that may cause harm."[2]

13.     One example of a dark pattern is drip pricing, in which companies "advertise only part of a product's total price to lure in consumers, and do not mention other mandatory charges until late in the buying process."[3]  Companies advertise one

---

[2] *Bringing Dark Pattern to Light*, FTC Staff Report (September 2022), available at https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.2022%20-%20FINAL.pdf

[3] *Id.*

Class Action Complaint                    2                    Case No. 5:26-cv-1216

price, and then load the purchase up with additional fees at the end of the checkout process. The goal of this is to conceal the true cost of the product or service, and prevent comparison shopping. The consumer selects and decides to purchase the product or service based on a lower advertised price, but ends up paying more because of junk fees that are tacked on at the end.

14.    The Federal Trade Commission has stated that junk fees are "deceptive or unfair," "because they are disclosed only at a later stage in the consumer's purchasing process."[4] "Drip pricing interferes with consumers' ability to price-compare and manipulates them into paying fees that are either hidden entirely or not presented until late in the transaction, after the consumer already has spent significant time selecting and finalizing a product or service plan to purchase."[5] By then, consumers have already committed to the purchase.

15.    Drip pricing costs consumers a lot of money. In addition, it harms consumers because it can "weaken competition by making it harder for consumers to price-compare across sellers. An honest business that sets forth the total price of its product at the outset will be at a significant disadvantage when compared to a seller that advertises an artificially low price to draw consumers in, then adds mandatory charges late in the transaction."[6]

16.    Drip pricing also artificially drives up the price of products (drives a wrongful price premium). When the full (and more expensive) price of a product is disclosed up front, this reduces demand and puts downward pressure on the prices that companies can charge. In contrast, when a lower price is disclosed up front, to lure consumers into the purchase process, and then junk fees are tagged on late in the

---

[4] https://www.federalregister.gov/documents/2022/11/08/2022-24326/unfair-or-deceptive-fees-trade-regulation-rule-commission-matter-no-r207011
[5] *Bringing Dark Patterns to Light*, FTC Staff Report, at 9 (September 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.2022%20-%20FINAL.pdf
[6] *Id.*

Class Action Complaint                    3                    Case No. 5:26-cv-1216

transactions, this artificially increases demand (completed sales) and thus increases the amount that companies can charge.

17.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a) prohibits "unfair or deceptive acts or practices in or affecting commerce," which includes drip pricing. The FTC has warned that "companies should include any unavoidable and mandatory fees in the upfront, advertised price" and "failure to do so has the potential to deceive consumers in violation of the FTC Act."[7]

18.     Drip pricing is also illegal under California law.  As explained above, this unfair and deceptive practice has long been generally prohibited under California law, including under California's Unfair Competition Law and False Advertising Law. And since July 1, 2024, drip pricing has been specifically prohibited by the CLRA.  The CLRA prohibits "Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than either of the following: (i) Taxes or fees imposed by a government on the transaction. (ii) Postage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer." Cal. Civ. Code § 1770 (29).

**B.     Cameo's drip pricing.**

19.     Cameo sells California consumers personalized videos or messages from celebrities (e.g., actors, athletes, influencers, and musicians).

20.     Cameo sells videos and messages through its website (cameo.com) and app. Cameo's homepage invites consumers to search by categories of celebrities, best sellers, or search terms. The homepage displays some prices for selected videos (e.g. "Top 10 on Cameo"). For example:

---

[7] *Id.*

*March 9, 2026*

21.     The displayed prices do not include any service fees.

22.     When consumers click a category or run a search, they see more prices. For example:

Actors category



March 9, 2026

Searching "harry potter"



March 9, 2026

23.    The displayed prices (e.g. $274 for Matthew Morrison or $99 for Devon Murray) do not include any service fees.

1      24.    When consumers reach the page for a particular celebrity, they see the

2  pricing for a personal video or message. For example, $119+ for Abby Lee Miller:



1    25.    The displayed prices do not include any service fees. And while the price

2  has a "+" symbol, to reasonable consumers this suggests that the price may be higher for

3  a higher quality or more elaborate video (not that the price will be inflated by junk fees).

4    26.    To buy a personalized video, consumers fill in all the request details,

5  including the occasion, recipient, instructions, and sender. For example:



1

2      27.      When consumers click, "Continue to payment," they see an order

3   summary with a price. For example, $119.00:

4

5



6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

28.     This price does not include any service fees. And while it says "Subtotal," the message immediately below ("Final price calculated after selecting delivery speed") suggests that the price may increase for faster delivery (not by adding junk fees).

29.     Consumers click "Continue" and go to the Checkout page. An example is shown on the following page:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



30.     As illustrated above, this page is cluttered with purchase options and fine print. At the bottom, at the very end of the purchase process and in faded text, it discloses an $11.90 "Service fee" (10% of the $119 video price). [8]

31.     At this point, consumers have already selected a celebrity, customized the video message, entered their email, and filled out their payment information. And they have done all of this based on the lower, up-front price.

32.     If consumers do notice the service fee or the increase in the total price, they are pressured to just go through with it (and eat the service fee) so as not to waste their previous effort. This drives consumers to pay service fees that they would not otherwise pay, if the higher price was disclosed up front. This is why drip pricing is effective and it is why it is illegal.

33.     Cameo's drip pricing also artificially drives up the price of its videos (drives a wrongful price premium). When the full (and more expensive) price of a video is disclosed up front, this reduces demand and puts downward pressure on the prices that Cameo can charge. In contrast, when a lower price is disclosed up front, to lure consumers into the purchase process, and then junk fees are tagged on late in the transactions, this artificially increases demand (completed sales) and thus increases the amount that Cameo can charge.

34.     The process is materially the same on Cameo's app. As illustrated above, a lower price is displayed up front, and the service fee is only disclosed at the very end of the purchase process.

35.     This drip pricing violates California law.

---

[8] The service fees can be an even higher percentage of the price, depending on the video and options selected.

**C.      Cameo charged Plaintiff a drip-priced service fee**

36.      On or around October 5, 2025, while residing in California, Mr. Ohler purchased a personalized Cameo video from Cameo's website, from Brandon Saller (lead singer of the band Atreyu).[9]

37.      Plaintiff's purchase process was materially similar to the example purchase process shown above.

38.      Cameo ultimately charged Mr. Ohler $110 for the video, which included a service fee.

39.      Mr. Ohler's receipt does not separately identify the service fee. But based on the 10% fee currently charged for Mr. Saller's videos, Mr. Ohler believes that the service fee was $10 (10% of the $100 video price). Cameo's records can confirm this fact.

40.      Plaintiff read and relied on the lower pricing Cameo disclosed up front for Mr. Saller (before the final purchase screen). As best as he can recall, Plaintiff believes this up-front pricing was $100, based on the then-current price of Mr. Saller's videos. When he relied on the lower, up-front price, he did not expect that Cameo would later tag on a junk service fee. In reliance on the up-front pricing, he invested time and effort to select an artist, customize his video, and fill out the request details. By the end of the purchase process, he was sucked into going through with the transaction. In this way, Cameo's failure to disclose the true total price up front was a substantial factor in his decision to move forward and complete the purchase.

41.      Plaintiff would purchase from Cameo again if he could be sure it would not try to slip in illegal service fees, without clearly disclosing them. But without a Court injunction forbidding Cameo from doing so, he cannot be sure and so cannot purchase a product he would otherwise like to purchase.

---

[9] https://www.cameo.com/thebrandonsaller

**D.    No adequate remedy at law.**

42.     Plaintiff seeks damages and, in the alternative, restitution.  Plaintiff seeks equitable remedies in the alternative because he has no adequate remedy at law. Plaintiff's remedies at law are also not equally prompt or efficient as their equitable ones.

43.     Plaintiff's UCL unlawful prong claim, for example, is based on a violation of the FTC Act. This is a distinct claim from his CLRA claim, which is premised on a violation of the relevant subsections of the CLRA.

44.     Plaintiff's UCL unfair prong claim also applies a more flexible test that can encompass conduct beyond what is expressly illegal under the applicable provisions of the CLRA.

45.     In addition, Plaintiff's equitable claims can be efficiently tried to the bench, without the delay and additional expense of a jury trial.

**E.    Class action allegations.**

46.     Plaintiff brings the asserted claims on behalf of the proposed classes of:

- **California Class**: all California consumers who purchased a personal video or message from Cameo, during the applicable statute of limitations, and paid a service fee.

- **CLRA Subclass**: all California Class members who purchased a personal video or message from Cameo, on or after July 1, 2024.

47.     The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons

**Numerosity**

48.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are thousands or tens of thousands of class members.

49.     Class members can be identified through Defendant's sales records and public notice.

**Predominance of Common Questions.**

50.     There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

- whether Cameo's drip pricing is illegal under California consumer protection law;
- damages or restitution needed to reasonably compensate Plaintiff and the proposed class.

**Typicality & Adequacy.**

51.     Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased a video from Cameo and was charged a service fee.  There are no conflicts of interest between Plaintiff and the class.

**Superiority.**

52.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**V.     Claims.**

<u>Count 1</u>: Consumers Legal Remedies Act (CLRA)

**(By Plaintiff and the CLRA Subclass)**

53.     Plaintiff incorporates each and every factual allegation set forth above.

54.     Plaintiff brings this cause of action individually and for the CLRA Subclass.

55.    The CLRA prohibits "Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than either of the following: (i) Taxes or fees imposed by a government on the transaction. (ii) Postage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer." Cal. Civ. Code § 1770 (29).

56.    As described in detail above, Cameo violates this subsection of the CLRA by advertising, displaying, and offering prices for its personal videos or messages that do not include the mandatory service fees that Cameo tacks on at the end of the purchase process. The service fees are not taxes or fees imposed by the government and are not postage or carriage charges.

57.    The CLRA also prohibits "Advertising goods or services with intent not to sell them as advertised," i.e., bait and switch advertising. Cal. Civ. Code § 1770 (9).

58.    As alleged in detail above, Cameo violated this provision by advertising a lower price up front for videos or messages, with the intent to tag on a service fee at the end and ultimately charge a higher price.

59.    As alleged in detail above, Cameo's drip pricing is likely to deceive reasonable consumers.

60.    As alleged in detail above, Plaintiff saw and relied on Cameo's lower, up-front pricing (that did not include the service fee) and this up-front pricing was a substantial factor in Plaintiff's decision to go through with the purchase.

61.    Subclass-wide reliance can be inferred because Defendant's drip pricing was material, i.e., a reasonable consumer would consider the lower, up-front price important in deciding whether to buy Cameo videos.

62.    Plaintiff and subclass members were injured as a direct and proximate result of Defendant's conduct because (1) they paid illegal and unfair junk fees, and/or (2) they overpaid for Cameo videos because they are sold at a price premium due to the hidden fees.

63.     Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of himself and all other members of the CLRA subclass, seeks injunctive relief.

64.     CLRA § 1782 NOTICE.  On March 16, 2026, a CLRA demand letter was sent to Defendant's Chicago headquarters and California registered agent via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here.  If Defendant does not fully correct the problem for Plaintiff and for each member of the CLRA Subclass within 30 days of receipt, Plaintiff and the CLRA Subclass will amend to seek all monetary relief allowed under the CLRA.  This amendment is expressly allowed by the CLRA. *See* Cal. Civ. Code § 1782 (d) ("An action for injunctive relief … may be commenced without [notice]" and after the notice period elapses the "consumer may amend his or her complaint without leave of court to include a request for damages.")

65.     A CLRA venue declaration is attached.

## Count 2: Unfair Competition Law (UCL)
### (By Plaintiff and the California Class)

66.     Plaintiff incorporates each and every factual allegation set forth above.

67.     Plaintiff brings this cause of action individually and for the California Class.

68.     Defendant has violated California's Unfair Competition Law (UCL) by engaging in unfair and unlawful conduct.

69.     <u>Unlawful</u>. As alleged in detail above, Defendant engaged in unlawful conduct by violating the FTC Act.

70.     <u>Unfair</u>. Defendant's conduct is unfair because the harm to the consumer greatly outweighs the public utility of Defendant's conduct.  There is no public utility to using drip pricing and junk fees.  Such practices mislead consumers on price, and prevent comparison shopping and competition.  This injury was not outweighed by any countervailing benefits to consumers or competition.  Hidden and late-disclosed fees

only injure healthy competition and harm consumers.  And companies could easily disclose any such fees upfront.

71.     Plaintiff and the California Class could not have reasonably avoided this injury.  As alleged in detail above, drip pricing is effective because reasonable consumers either do not notice the junk fees, or by the time they do they are already committed to the transaction based on the lower up-front pricing.

72.     Defendant violated established public policy by violating the CLRA, FAL and the FTC Act, as alleged above and incorporated here.  The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA, FAL and the FTC Act).

73.     Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

74.     Fraudulent. As alleged in detail above, Cameo's drip pricing misleads reasonable consumers with lower, up-front prices that do not include the service fee.

75.     As alleged in detail above, Plaintiff saw and relied on Cameo's lower, up-front pricing (that did not include the service fee) and this up-front pricing was a substantial factor in Plaintiff's decision to make the purchase.

76.     Classwide reliance can be inferred because Defendant's drip pricing was material, i.e., a reasonable consumer would consider the lower, up-front pricing important in deciding whether to buy a Cameo video.

77.     Plaintiff and the California class were injured as a direct and proximate result of Defendant's conduct because (1) they paid illegal and unfair junk fees, and/or (2) they overpaid for Cameo videos because they are sold at a price premium due to the hidden fees.

### Count 3: False Advertising Law (FAL)
### (By Plaintiff and the California Class)

78.     Plaintiff incorporates each and every factual allegation set forth above.

79.     Plaintiff brings this cause of action for himself and the California Class.

Class Action Complaint                          18                          Case No. 5:26-cv-1216

80.     Section 17500 of the False Advertising Law prohibits misleading advertising. Cal. Bus. & Prof. Code § 17500

81.     As alleged in detail above, Cameo's drip pricing misleads consumers with lower, up-front prices that do not include the service fee.

82.     Cameo knows, or reasonably should know, that this practice is misleading. Indeed, Cameo decides to include the service fee only at the end (instead of up front) because it knows that this drip pricing will increase sales (while still allowing Cameo to profit from the junk service fee).

83.     As alleged in detail above, Plaintiff saw and relied on Cameo's lower, up-front pricing (that did not include the service fee) and this up-front pricing was a substantial factor in Plaintiff's decision to make the purchase.

84.     Classwide reliance can be inferred because Defendant's drip pricing was material, i.e., a reasonable consumer would consider the lower, up-front pricing important in deciding whether to buy a Cameo video.

85.     Plaintiff and the California class were injured as a direct and proximate result of Defendant's conduct because (1) they paid illegal and unfair junk fees, and/or (2) they overpaid for Cameo videos because they are sold at a price premium due to the hidden fees.

### **Count 4:** **Quasi-Contract  (Unjust Enrichment)**
### **(By Plaintiff and the California Class)**

86.     Plaintiff incorporates the facts alleged above.

87.     Plaintiff brings this claim for himself and the California class.

88.     As alleged in detail above, Cameo charged Plaintiff and the class illegal service fees.

89.     In this way, Defendant received a direct and unjust benefit, at Plaintiffs' expense.

90.     Plaintiff and the class seek restitution of this unjust benefit.

**VI.    Relief.**

91.    Plaintiff seeks the following relief

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class and subclass;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

## **Demand For Jury Trial**

92.    Plaintiff demands the right to a jury trial on all claims so triable.


Dated: March 16, 2026                    Respectfully submitted,

By: */s/ Jonas Jacobson*

Jonas Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*

Class Action Complaint                    20                    Case No. 5:26-cv-1216